FILED

2022 Jan-10  PM 12:13
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## EASTERN DIVISION

**COBBLESTONE GLEN FLATS, LLC,**
    **Plaintiff,**

**v.**

                                      **Case No. 1:20-cv-410-CLM**

**R&R-BETH LP,**
    **Defendant.**

## MEMORANDUM OPINION

This case concerns liability for damage to rental houses. The property owner (Cobblestone Glen Flats, LLC), sued the tenant (R&R-Beth), who in-turn filed counterclaims against Cobblestone and the property management company (Taylor Real Estate Solutions Series, LLC).

The Court grants in part and denies in part Cobblestone's motion for partial summary judgment. (Doc. 29). The Court grants Taylor's motion for summary judgment. (Doc. 31). And the Court grants in part and denies in part R&R-Beth's motion for summary judgment. (Doc. 28).

The case will go to trial on Cobblestone's claims for breach of contract, trespass on the case, and negligence.

## FACTUAL AND PROCEDURAL BACKGROUND

Cobblestone Glen Flats, LLC, owned a 46-townhome complex in Oxford, Alabama. (Doc. 28-13 at 39–40). R&R-Beth LP manufactures and installs industrial air filtration systems and needed housing for its workers. (Doc. 28-2 at 26–27). So R&R-Beth leased eight units from Cobblestone from December 2018 to roughly December 2019—but not under the same lease agreements. (Doc. 28-2 at 52–53).

## I.     The Brittain and Taylor Leases

In December 2018, R&R-Beth and Cobblestone's property manager, J. Brittain & Associates, executed eight separate leases that ran from December 16, 2018 to June 30, 2019. (Doc. 30-13 at 2–58). These original eight leases—one for each unit—contain hold-over provisions. (*See, e.g.*, *id.* at 4 (§ 2.3)).

In May 2019—one month before the original leases were set to expire—Cobblestone switched its property-management services from J. Brittain to Taylor Real Estate Solutions Series, LLC. (Doc. 28-17 at 8–10). In June, Taylor asked R&R-Beth whether it planned to renew the eight leases before their June 30th expirations. (Doc. 30-13 at 132–34). After R&R-Beth said that it wished "to keep all of the apartments at least until the end of August," (*id.* at 132), Taylor sent an email with a link to its online lease-management portal so that R&R-Beth could sign new (and different) leases for each unit. (Doc. 30-29 at 3).[1]

---

[1] The terms of the Brittain lease agreements differ from the Taylor leases in several ways. (*Compare* doc. 30-13 at 2–8 (Brittain lease), *with id.* at 84–99 (Taylor lease)).

R&R-Beth accessed and electronically signed new leases for units 99 and 191, which extended those lease terms through August 31. (Doc. 30-13 at 84–115). But R&R-Beth never signed new leases for the other six units because, it says, "problems with Taylor Appfolio portal prevented [R&R-Beth] from signing new Taylor lease agreements for units 89, 87, 81, 85, 94, and 105." (Doc. 36 at 6–7 ¶ 11).

In September, R&R-Beth and Taylor extended the lease terms for all eight units through email. (Doc. 28-28 at 4–5). But only two units (99 and 191) had signed Taylor leases. The only signed leases for the other six were the Brittain leases.

## II.    Vandalism & Vacation

On December 3, R&R-Beth notified Taylor by email that it wanted to vacate six units (75, 81, 85, 89, 93, and 99) on December 31, and a seventh unit (105) on January 31. (Doc. 28-28 at 33).[2]

But the next day, someone broke into and vandalized seven of R&R-Beth's Cobblestone units (75, 81, 85, 89, 93, 99, and 105). (Doc. 28-27 at 18–38). R&R-Beth emailed Taylor one day later (December 5th), telling Taylor that it learned of a break-in at unit 105 and wished to vacate all eight units on December 31 because its "workers are not feeling safe in this area anymore." (Doc. 30-13 at 137).

The break-ins and vandalism caused property damage to the units. (Doc. 30-13 at 59–73). But Stephen Whatley, Sr., then-owner of Cobblestone Glen Flats, LLC,

---

[2] The record does not make clear what R&R-Beth wanted to do for the eighth unit (191).

testified that R&R-Beth's employees had also damaged the units:

> We could determine the damages done by whoever did the damage, the
> vandalism. But there was additional wear and tear on the R&R-Beth
> units because they were not taken care of.
>
> They were filthy. They didn't empty garbage. They had garbage
> standing in the units. They had dirt all over the floor. They had all—
> according to my son, they had all kind of stuff on the counters and just
> were uncleanly.

(Doc. 30-1 at 210–11). Authorities never determined who vandalized the units. (*Id.*

at 141–42). R&R-Beth vacated units 75, 81, 85, 89, 93, and 99 by December 31,

2019. (Doc. 30-14 at 94–95). And it vacated units 105 and 191 by January 31, 2020.

(Doc. 28-2 at 183–84).

## III.   The Lawsuit

Cobblestone sued R&R-Beth for breach of contract under the Brittain leases,

trespass, conversion, negligence, negligent supervision, and conspiracy. (Doc. 5).

Cobblestone's suit seeks to recover for the damage only to units 75, 81, 85, 89, 93,

and 105, which are the six units for which R&R-Beth didn't sign a Taylor lease. (*Id.*

at 2). R&R-Beth filed counterclaims against Cobblestone and Taylor for breach of

contract, fraudulent misrepresentation (and suppression), conversion, and violation

of the Alabama Uniform Residential Landlord and Tenant Act. (Doc. 8).

R&R-Beth, Cobblestone, and Taylor each filed a summary-judgment motion.

(Docs. 28, 29, 31).

## STANDARD OF REVIEW

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if its resolution "might affect the outcome of the suit." *Id.* At the summary-judgment stage, "all evidence and factual inferences are to be viewed in the light most favorable to the non-moving party, and all reasonable doubts about the facts are resolved in favor of the non-moving party." *Hardigree v. Lofton*, 992 F.3d 1216, 1223 (11th Cir. 2021).

## DISCUSSION

### I.   Cobblestone's Claims

The Court starts by addressing each of Cobblestone's six claims in turn.

### A.   Breach of Contract (Cobblestone's Count 1)

1. <u>The claims</u>: In its amended complaint, Cobblestone alleged that R&R-Beth violated various provisions of the Brittain leases for units 75, 81, 85, 89, 93, and 105—*i.e.*, the six units for which R&R-Beth never signed Taylor leases. (Doc. 5 at 2–7). Among other things, the Brittain leases say that R&R-Beth must: (1) "report all needed repairs within 24 hours of discovery," § 2.1(21); (2) repair all property damage that results from "[a]ny criminal activity to happen on the property,"

§ 2.1(8); and (3) maintain the units "in clean and sanitary manner" and to return them "in as good condition as received, normal wear and tear expected," § 2.1(10). (*Id.*). While Cobblestone didn't plead any claims under the Taylor leases in its amended complaint, in its summary judgment briefing, Cobblestone argues that R&R-Beth violated the Taylor leases, too. (Doc. 37 at 25).

R&R-Beth has three retorts. First, R&R-Beth argues that the Taylor leases apply to the six units at issue, even though it didn't sign Taylor leases for any of the six.  (Doc. 36 at 19–20). R&R-Beth then argues that, if the Brittain leases control, R&R-Beth didn't violate any provisions of the Brittain leases. (Docs. 43 at 20–23, 49 at 11–13). Third, R&R-Beth points out that Cobblestone failed to plead breaches of the Taylor agreements, which govern at least two units. (Doc. 36 at 23).

Cobblestone and R&R-Beth each moved for summary judgment. (Docs. 28, 29). The Court denies summary judgment for both sides.

To prevail on a claim for breach of contract, the plaintiff must prove: (1) the existence of a valid and enforceable contract binding the parties; (2) his own performance under the contract; (3) the other party's nonperformance; and (4) resulting damages. *State Farm Fire & Cas. Co. v. Slade*, 747 So. 2d 293, 303 (Ala. 1999). The elements of an express contract are "an offer and an acceptance, consideration, and mutual assent to terms essential to the formation of a contract."

*Ex parte Jackson Cnty. Bd. of Educ.*, 4 So. 3d 1099, 1103 (Ala. 2008) (quoting *Ex parte Grant*, 711 So. 2d 464, 465 (Ala. 1997)).

2. <u>Which lease controls</u>: The Court first has to decide whether the Brittain or Taylor lease governs the six units Cobblestone pleaded in its complaint. Cobblestone argues that the Brittain leases apply because they contain a holdover provision and R&R-Beth never signed Taylor leases for those units. (Doc. 45 at 3). R&R-Beth argues that the parties manifested assent to the Taylor leases for all eight units despite neither party signing them. (Doc. 36 at 22–23).

Under Alabama law, "the purpose of a signature on a contract is to show mutual assent." *Ex parte Holland Mfg. Co.*, 689 So. 2d 65, 66 (Ala. 1996). But "the existence of a contract may also be inferred from other external and objective manifestations of mutual assent." *I.C.E. Contractors, Inc. v. Martin & Cobey Const. Co., Inc.*, 58 So. 3d 723, 725 (Ala. 2010). So unless required by statute or agreement, a contract "need not be signed, provided it is accepted and acted upon." *Ex parte Holland*, 689 So. 2d at 66. And "[w]hether a writing was accepted and acted upon as a contract is a question for a jury." *Id.*

The Court finds that a genuine dispute of material fact exists as to whether the parties mutually "accepted and acted upon" the Taylor agreements. *Id.* On one hand, a reasonable jury could find that the parties accepted and acted on the Taylor agreements. First, Cobblestone (through Taylor) created and delivered—or at least

tried to deliver—the Taylor leases to R&R-Beth. (Doc. 30-29 at 3). Second, Brent Taylor (of Taylor Real Estate Solutions) testified that he managed all eight R&R-Beth units under the Taylor leases. (Doc. 28-24 at 104–05, 112).[3] And third, evidence suggests that R&R-Beth paid rent in accordance with the Taylor leases. R&R-Beth paid $1,000 per month per unit. (Doc. 28-24 at 115). Although both the Brittain leases and Taylor leases said that rent would be $1,000 per month per unit, (Doc. 30-13 at 2, *id.* at 84), the holdover provision of the Brittain leases (which Cobblestone says applies) provided that rent should have been $1,200 per month per unit (*id.* at 4 (§ 2.3)). So R&R-Beth's payment of an amount correct under the Taylor leases and incorrect under the Brittain leases supports a finding that both parties accepted the Taylor leases.

On the other hand, a reasonable jury could also find that the parties didn't accept and act on the Taylor leases. Cobblestone produced evidence that "[d]espite more than one request . . . to sign all eight new lease agreements," R&R-Beth "only ever signed two." (Doc. 40-4 at 3 ¶ 5). Other evidence shows that R&R-Beth knew that Cobblestone "want[ed] an electronic signature." (Docs. 40-2 at 67–68). And Stephen Whatley testified that he believed that the Brittain leases applied for units

---

[3] Cobblestone objects to reliance on this testimony because it, according to Cobblestone, "calls for a legal conclusion." (Doc. 45 at 20). Although Bryan Taylor cannot "testify to the legal implications of conduct," *see Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990), his testimony *is* admissible to prove that he believed that the Taylor leases applied and governed the parties' contractual relationship. *See Bowie v. Priority Care Pharmacy, L.L.C. v. CaremarkPCS, L.L.C.*, No. 6:18-cv-300, 2018 WL 1964596, at *4 (N.D. Ala. Apr. 26, 2018).

that R&R-Beth did not sign Taylor leases.  (Doc. 28-13 at 95–96). And at least one email from Taylor explained that new leases "need[ed] to be signed." (Doc. 30-13 at 140). From this evidence, a jury could find that neither party "accepted and acted upon" the Taylor leases. *Ex parte Holland*, 689 So. 2d at 66.

Because of the genuine dispute of material fact, the Court denies R&R-Beth's and Cobblestone's motions for summary judgment on Cobblestone contract claim.

3. <u>If Brittain leases control</u>: Cobblestone asserted in its amended complaint and summary-judgment briefing that R&R-Beth violated three provisions of the Brittain leases. If the jury finds that the Brittain leases apply, then it must also determine whether R&R-Beth violated section 2.1(8) (criminal-activity liability), 2.1(10) (good order and repair), and 2.1(21) (24-hour reporting).

4. <u>If Taylor leases control</u>: If the jury finds that the Taylor leases apply, then Cobblestone's contract claim fails. Its amended complaint alleges breaches of the Brittain leases but never mentions the Taylor leases. (Doc. 5 at 2–7). It therefore fails to raise a breach-of-contract claim based on R&R-Beth's alleged breach of the Taylor leases. Well-settled law explains that a plaintiff cannot amend her complaint through arguments made at the summary-judgment stage. *Monaghan v. Worldpay US, Inc.*, 955 F.3d 855, 859 (11th Cir. 2020). So even though Cobblestone argued at summary judgment that R&R-Beth violated the Taylor leases, its failure to make those allegations in its amended complaint precludes it from recovering on that basis.

Based on the genuine dispute of material fact about which leases governed the parties' contractual relationship, the Court denies Cobblestone's and R&R-Beth's motions for summary judgment on Cobblestone's contract claim.

## B.     Trespass/Damage to Property (Cobblestone's Count 2)

Cobblestone's second claim is for trespass based on "[t]he abuse and damage of Cobblestone's personal and real property." (Doc. 5 at 7–9). R&R-Beth moved for summary judgment. And in response, Cobblestone clarified its claim: R&R-Beth's "interference with Cobblestone's ultimate possession of the Units which was delayed due to the extensive repairs required in the Units constitutes a trespass against Cobblestone for which it must be compensated."

### 1.     Cobblestone cannot sue for trespass.

"A trespass to property is a wrong against the right of possession or entry." *Boyce v. Cassese*, 941 So. 2d 932, 945 (Ala. 2006). The plaintiff must prove that the defendant intentionally entered or interfered with real or personal property in possession of the plaintiff without consent. *See Cent. Parking Sys. v. Steen*, 707 So. 2d 226, 228 (Ala. 1997).

Neither party briefed whether a landlord has an adequate possessory interest in a leased property to maintain a trespass action against the tenant. Several out-of-jurisdiction courts have held that a landlord cannot sue a tenant for trespassory

activities committed during the lease period.[4] And the Alabama Supreme Court has held that a landlord could not sue a third party for trespass when the injury occurred during the lease period because the claim belonged to the tenants. *AmSouth Bank, N.A. v. City of Mobile*, 500 So. 2d 1072, 1074 (Ala. 1986). The *AmSouth Bank* court relied on earlier precedent that "[a] landlord who has granted this possession to a tenant for a definite term has no immediate right of possession and cannot maintain the action [for trespass] during such term." *Id.* (quoting *Lacey v. Morris*, 110 So. 379, 380 (Ala. 1926)). And the Alabama Court of Civil Appeals held that a landlord could not sue a tenant's parents for trespass because "[t]he lease granted the tenant exclusive possession of the leasehold." *Laird v. Kittrell*, 753 So. 2d 519, 520 (Ala. Civ. App. 1999). By contrast, the Eleventh Circuit has held that a landlord *could* sue a tenant for trespass under Alabama law for damage to a common area because the landlord maintains "a degree of control and possession over the common areas." *Colonial Props., Inc. v. Vogue Cleaners, Inc.*, 86 F.3d 210, 211 (11th Cir. 1996).

Cobblestone did not reserve any right of possession or entry in the leases. Consistent with the cases cited above, Cobblestone cannot sue R&R-Beth for

---

[4] *See, e.g.*, *Patton v. TPI Petroleum, Inc.*, 356 F. Supp. 2d 921, 930–31 (E.D. Ark. 2005) (holding person in lawful and exclusive possession of property was not liable for trespass because intrusion was not to land of another); *325–343 E. 56th St. Corp. v. Mobil Oil Corp.*, 906 F. Supp. 669, 681 (D. D.C. 1995) (holding plaintiff cannot sue for trespass where property was "either leased or owned by the defendants when the alleged trespass occurred"); *Graham Oil Co. v. BP Oil Co.*, 885 F. Supp. 716, 725 (W.D. Pa. 1994) (holding landlord could not sue former tenant under trespass for activities committed during term of lease); *Wilson Auto Enter., Inc. v. Mobil Oil Corp.*, 778 F. Supp. 101, 106 (D.R.I. 1991) (holding plaintiff cannot sue for trespass because activity occurred during leasehold); *Laska v. Steinpreis*, 231 N.W.2d 196, 319–20 (Wis. 1975) (holding plaintiff could not bring trespass claim where "the relationship between the parties was that of landlord . . . and tenant").

trespass because, at the time of the alleged trespass (the damage), Cobblestone lacked an adequate possessory interest in the property.

### 2. Cobblestone can sue for trespass on the case.

The Alabama Supreme Court has explained that "a landlord may sue for an injury to the reversion interest, even while a tenant is in possession." *AmSouth Bank*, 500 So. 2d 1074. But that injury "entitle[s] [Cobblestone] to pursue an action on the case," which is a claim for trespass on the case. *Id.* at 1074.

A plaintiff can maintain an action for trespass on the case when the defendant's injurious activity is negligent (rather than intentional). *Business Realty Inv. Co., Inc. v. Jefferson Cnty.*, No. CV 2:09-1139-RBP, 2013 WL 3381374, at *2 (N.D. Ala. 2013); *see also Crotwell v. Cowan*, 198 So. 126, 127 (Ala. 1940) ("Under the common law, the foundation for civil liability for injuries to persons and property consequent upon the unintentional application of force, whether the act be affirmative or omissive, is negligence, and the appropriate common law action is case, speaking more correctly, trespass on the case. But when force is intentionally applied by direct affirmative act it is trespass and the appropriate action for the recovery of damages therefore is trespass.").

Cobblestone didn't bring a separate claim for trespass on the case. (Doc. 5 at 7–9). But it did allege that R&R-Beth's injurious activity involved, among other

things, "gross negligence." (*Id.* at 8). The Court finds that Cobblestone can therefore pursue a trespass-on-the-case claim.

The summary-judgment record supports a jury inference that R&R-Beth's employees negligently damaged the units. Stephen Whatley testified that the units suffered structural damage because they "were not taken care of" and said that R&R-Beth's workers "trashed the units pretty well on a day-to-day basis." (Doc. 30-1 at 210–11). A reasonable jury could infer that some damage to the apartments resulted from R&R-Beth's employee's conduct (rather than the vandals) beyond ordinary wear and tear. So if R&R-Beth's employees damaged Cobblestone's reversionary interest in the units, Cobblestone may proceed to trial on its claim for trespass on the case. *See AmSouth Bank*, 500 So. 2d at 1074–75.[5] Accordingly, the Court denies summary-judgment.[6]

### C.    Conversion (Cobblestone's Count 3).

Cobblestone also sued R&R-Beth for conversion. (Doc. 5 at 9–10). R&R-Beth moved for summary judgment.

"To constitute conversion, there must be a wrongful taking or a wrongful detention or interference, or an illegal assumption of ownership, or an illegal use or

---

[5] Cobblestone cannot pursue damages that resulted from the vandalism because no evidence suggests that R&R-Beth's employees were the vandals.

[6] Another analytical issue is that "[i]f a party enters property or possesses property under a legal right, entry or possession pursuant to that right cannot constitute a trespass." *Boyce*, 941 So. 2d at 945. Thus, the jury must determine whether R&R-Beth's employees possessed the units in a manner consistent with their contractual rights. If so, then Cobblestone's claim fails.

misuse of another's property." *Rice v. Birmingham Coal & Coke Co., Inc.*, 608 So. 2d 713, 714 (Ala. 1992).

The Court grants summary judgment for two reasons. First, as with trespass, Cobblestone lacked an adequate possessory interest in the units at the time of the alleged conversion. The Alabama Supreme Court has made clear that, when a landlord leases a property to a tenant, the landlord "has no immediate right of possession" in that property. *AmSouth Bank, N.A.*, 500 So. 2d at 1074. And the Court is unaware of any exception that allows a landlord to pursue a conversion claim based on its reversionary interest in the property.

Second, Cobblestone's claim fails because "[a]n action for conversion will not lie for the taking of real property, nor will it lie for the taking of personal property that has been incorporated into real property." *Baxter v. SouthTrust Bank of Dothan*, 584 So. 2d 801, 805 (Ala. 1991) (citations omitted). Cobblestone has not explained how its conversion claim relies on damage other than to "real property" or "personal property that has been incorporated into real property." *Id.* And for damage to any other personal property inside the units, it appears to be impossible for R&R-Beth to *prove* that R&R-Beth's employees (rather than the vandals) caused it.  As a result, the Court grants summary judgment to R&R-Beth.

### D.    Negligence (Cobblestone's Count 4)

Cobblestone's fourth claim is for negligence. (Doc. 5 at 10). Its theory is that R&R-Beth (through its employees) breached its "duty to prevent damage and destruction to Cobblestone's real and personal property." (*Id.*). R&R-Beth moved for summary judgment, which the Court denies.

First, R&R-Beth argues that Cobblestone "cannot bring both a negligence claim and a breach of contract claim" because the alleged breach is merely of a contractual duty. (Doc. 36 at 27). It is true that "an ordinary breach of contract will not give rise to a tort." *Brown-Max Assocs., Ltd. v. Emigrant Sav. Bank*, 703 F.2d 1361, 1371 (11th Cir. 1983). But any tenant (under contract or not) owes statutory duties to the landowner to keep the premises "as clean and safe as the condition of the premises permits" and to "not deliberately or negligently destroy, deface, damage, impair, or remove any part of the premises." ALA. CODE § 35-9A-301.  So Cobblestone can pursue a "property damage" negligence claim, *Vines v. Crescent Transit Co.*, 85 So. 2d 436, 440 (Ala. 1955), based on R&R-Beth's non-contractual duties, keeping in mind that Cobblestone cannot obtain duplicate recovery.

Second, R&R-Beth says that Cobblestone's negligence claim fails on the merits. "To establish negligence, [a] plaintiff must prove: (1) a duty to a foreseeable plaintiff; (2) a breach of that duty; (3) proximate causation; and (4) damage or injury." *Martin v. Arnold*, 643 So. 2d 564, 567 (Ala. 1994). A reasonable jury could

find that R&R-Beth violated its duties set forth in the above-quoted Section 35-9A-301 through Stephen Whatley's testimony about R&R-Beth's above-wear-and-tear damage to the units. (Doc. 30-1 at 210–11). A jury could link R&R-Beth to that damage (but not the vandalism). And a jury could infer that R&R-Beth failed to keep the premises "safe and clean" and that R&R-Beth "negligently destroy[ed], deface[d], damage[d], [or] impair[ed]" the units.

For these reasons, the Court denies summary judgment.

### E.    Negligent Supervision (Cobblestone's Count 5)

Cobblestone's fifth claim is for negligent supervision. (Doc. 5 at 11). Cobblestone alleges that R&R-Beth failed to monitor and supervise its employees adequately to prevent damage to the units. (*Id.*).   R&R-Beth seeks summary judgment, which the Court grants. For negligent hiring, training, or supervision claims, the Alabama Supreme Court has explained:

> In the master and servant relationship, the master is held responsible for his servant's incompetency when notice or knowledge, either actual or presumed, of such unfitness has been brought to him. Liability depends upon its being established by affirmative proof that such incompetency was actually known by the master or that, had he exercised due and proper diligence, he would have learned that which would charge him in the law with such knowledge. It is incumbent on the party charging negligence to show it by proper evidence.

*Synergies3 Tec Servs., LLC v. Corvo*, 319 So. 3d 1263, 1276 (Ala. 2020).

Cobblestone's claim fails because it has not shown that R&R-Beth knew or should have known that any of its employees were incompetent to dwell in a rented house. So the Court grants summary judgment to R&R-Beth on this claim.

### F.    Conspiracy (Cobblestone's Count 6)

Cobblestone's sixth claim is for conspiracy. (Doc. 5 at 11–12). It alleged that the "Defendants agreed and conspiracy among each other to act in concern to accomplish the wrongful acts described" in the amended complaint. (*Id.* at 12). R&R-Beth moved for summary judgment. The Court grants it.

Cobblestone made no arguments in support of its conspiracy claim at summary judgment. (Docs. 29, 37, 45, 51). By failing to do so, it has abandoned the claim. *See Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (en banc) ("[G]rounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned."). So the Court grants summary judgment.

### G.    Cobblestone's Damages and Attorney Fees

R&R-Beth challenges Cobblestone's damages. (Doc. 36 at 30–32). The Court will not grant summary judgment to R&R-Beth on this basis because a plaintiff can recover nominal damages for contract, trespass, and negligence claims. *See Rushing v. Hooper-McDonald, Inc.*, 300 So. 2d 94, 98 (Ala. 1974) (trespass); *Caplan v.*

*Benator*, 262 So. 3d 672, 680 (Ala. Civ. App. 2018) (negligence); *Roberson v. C.P.*

*Allen Constr. Co., Inc.*, 50 So. 3d 471, 477 (Ala. Civ. App. 2010) (contract).[7]

R&R-Beth also argues that Cobblestone cannot recover attorney fees. (Doc.

36 at 32). The AURLTA provides that "a landlord may recover actual damages and

reasonable attorney fees and obtain injunctive relief for noncompliance by the tenant

with the rental agreement or Section 35-9A-301." ALA. CODE § 35-9A-421(c). So

Cobblestone can seek attorney fees if it prevails on its contract or negligence

theories.

* * *

To sum up, the Court grants R&R-Beth's motion for summary judgment on

Cobblestone's claims for conversion, negligent supervision, and conspiracy.

Cobblestone's claims for breach of contract, trespass on the case, and negligence

may proceed to trial.

## II.    R&R-Beth's Counterclaims

R&R-Beth brought counterclaims against Cobblestone and Taylor for:

(1) breach of agreement; (2) fraudulent misrepresentation and suppression;

(3) conversion; and (4) violation of AURLTA Sections 35-9A-202 and 35-9A-163.

(Doc. 8). The Court addresses each claim in turn.

---

[7] Cobblestone seeks to recover: (1) the cost of repairs to the units; (2) lost rental income for four months; and (3) lost profits from a sale of the complex that fell through. (Docs. 36 at 13, 45 at 30). The Court warns Cobblestone that it must adequately prove and connect its damages to its legal theories.

### A.      Breach of Agreement (R&R-Beth's Count 1)

R&R-Beth's first claim alleges that Cobblestone and Taylor violated R&R-Beth's contractual right under the Taylor leases to "peaceably and quietly have, hold, and enjoy the rented premises for the term mentioned without hindrance or interruption by the Landlord." (Doc. 8 at 13–14). R&R-Beth, Cobblestone, and Taylor each moved for summary judgment on this claim. The Court grants summary judgment to Cobblestone and Taylor and denies summary judgment to R&R-Beth.

R&R-Beth says Cobblestone and Taylor violated the covenant of quiet enjoyment by: (1) "not taking steps to prevent the break-ins from occurring," (2) "not providing housing for R&R following the break-ins," and (3) "not allowing R&R-into unit 75 after the break-ins and seizing/disposing of property belonging to R&R." (Docs. 36 at 33, 43 at 27–28, 44 at 21–22). None of these theories survives summary judgment.

**1. Unforeseeable criminal activity cannot create liability**. "The general rule in Alabama is that landlords and businesses are not liable for the criminal acts of third persons unless such acts were reasonably foreseeable." *Brock v. Watts Realty Co., Inc.*, 582 So. 2d 438, 440 (Ala. 1991). "The basis for this rule has been that landlords and businesses should not be held liable for acts that could not have been anticipated." *Id.*   R&R-Beth presented no evidence that the alleged vandalism was "reasonably foreseeable" to Cobblestone or Taylor. In other words, no evidence

suggests that Cobblestone or Taylor had actual or constructive notice of criminal activity at the complex. As a result, the criminal acts of vandalism cannot create tort or contract liability for Cobblestone or Taylor. So R&R-Beth cannot rely on their failures to "tak[e] steps to prevent the break-ins from occurring [and] not providing housing for R&R following the break-ins." (Doc. 36 at 33).

   **2. Allegedly locking R&R-Beth out and disposing of property**. R&R-Beth says that Cobblestone and Taylor locked it out of unit 75 and later disposed of R&R-Beth's property in unit 75. (Doc. 36 at 33).

   For one, the record does not support a jury finding that Cobblestone or Taylor changed the lock to unit 75 before the end of R&R-Beth's lease term. The lease ended on December 31, 2019. (Doc. 30-14 at 94–95). Mathias Hoene of R&R-Beth testified that: (1) R&R-Beth lost its key to unit 75 in December and couldn't retrieve its belongings after the break-ins, (doc. 28-2 at 173); and (2) at some point before January 20, 2020, someone from Cobblestone or Taylor "changed the lock" for each unit, (*id.* at 97). Even viewing the evidence in the light most favorable to R&R-Beth, a reasonable jury could not find that Cobblestone or Taylor locked R&R-Beth out before the end of the lease term. As a result, this allegation cannot establish a violation of the covenant of quiet enjoyment that extends only "for the term" of the lease. (Doc. 30-13 at 88 (§ 4.1(27))).

Along the same lines, there is insufficient evidence to support a finding that Cobblestone or Taylor "seiz[ed]" and "dispos[ed]" of R&R-Beth's property during the lease term. So any seizure or disposal of R&R-Beth's property cannot violate the covenant of quiet enjoyment that extends only "for the term" of the lease. (Doc. 30-13 at 88 (§ 4.1(27))).

So the Court grants summary judgment to Cobblestone and Taylor and denies summary judgment to R&R-Beth.

### B. Fraudulent Misrepresentation and Suppression (R&R-Beth's Count 2).

R&R-Beth's second claim is that Cobblestone and Taylor: (1) misrepresented that Taylor was the owner of the units; (2) misrepresented that the Taylor leases were the operative lease agreements; and (3) suppressed that Cobblestone Glen Flats, LLC, was the owner of the units. (Doc. 8 at 14–15). Cobblestone and Taylor moved for summary judgment, which the Court grants.

### 1. Fraudulent Misrepresentation

The elements for fraudulent misrepresentation are "(1) a false representation (2) concerning a material existing fact (3) relied upon by the plaintiff (4) who was damaged as a proximate result." *Fisher v. Comer Plantation, Inc.*, 772 So. 2d 455, 463 (Ala. 2000). "A 'material fact' is 'a fact of such a nature as to induce action on the part of the complaining party.'" *Baker v. Travelers Ins. Co.*, 207 F. Supp. 3d 1246, 1251 (N.D. Ala. 2016). And a misrepresentation "is sufficient if it materially

contributes and is of such a character that the [complaining] party would not have consummated the contract had he known the falsity of the statement." *Id.*

For context, Cobblestone Glen Flats, LLC, owned the housing complex. (Doc. 28-13 at 39–40). The Brittain leases did not name an owner. (Doc. 30-13 at 2–8). And the Taylor leases incorrectly listed "Stephen Whatley" as the owner. (*Id.* at 89).

First, R&R-Beth says that Cobblestone and Taylor misrepresented that Taylor (the property manager) was the owner. (Doc. 8 at 15). But R&R-Beth has not pointed to any evidence that suggests Cobblestone or Taylor made a false representation that Taylor owned the complex. Nor has R&R-Beth explained how being "led to believe" that Taylor was the owner amounts to a false representation. So this theory fails on the first element. *Fisher*, 772 So. 2d at 463.

Second, R&R-Beth also argues in its summary-judgment briefing that Cobblestone and Taylor misrepresented that Stephen Whatley, Sr., was the owner. (Doc. 43 at 29). True, the Taylor leases say that "Stephen Whatley" owned the complex. (Doc. 30-13 at 89). But R&R-Beth admittedly never *relied* on this misrepresentation. Instead, R&R-Beth says it "was led to believe that Taylor was the owner." (Doc. 43 at 29). So R&R-Beth cannot show that it "took a different course of action because of the misrepresentation" about Whatley. *Hunt Petroleum Corp. v. State*, 901 So. 2d 1, 5 (Ala. 2004). So this theory fails on the third element. *Fisher*, 772 So. 2d at 463.

Third, R&R-Beth alleged that Cobblestone and Taylor misrepresented "that the Taylor lease agreements were the operative lease agreements with R&R-Beth beginning in July 2019." (Doc. 8 at 14–14). But it has not shown that Cobblestone or Taylor ever made a false representation that the Taylor leases governed their contractual relationship. So this theory fails on the first element. *See Fisher*, 772 So. 2d at 463.

For these reasons, the Court grants summary judgment to Cobblestone and Taylor on R&R-Beth's fraudulent misrepresentation claim.

## 2.   Fraudulent Suppression

The elements of fraudulent suppression are that: (1) the defendant had a duty to disclose; (2) the defendant suppressed an existing, material fact; (3) the defendant had actual knowledge of the fact and its materiality; (4) the plaintiff's lack of knowledge induced it to act; and (5) the plaintiff suffered actual damage as a proximate result. *Hardy v. Blue Cross and Blue Shield of Ala.*, 585 So. 2d 29, 32 (Ala. 1991). And "a plaintiff in a suppression case must prove that [it] was induced to act by [its] reasonable reliance on the state of affairs as it appeared in the absence of the suppressed information." *Houston Cnty. Health Care Auth. v. Williams*, 961 So. 2d 795, 814 (Ala. 2006).

R&R-Beth alleged that Cobblestone and Taylor "suppressed that Cobblestone was the owner of the leased properties." (Doc. 8 at 15). And it argues in its summary-

judgment briefing that: (1) Cobblestone and Taylor had a duty under Alabama law to disclose the owner of the units; (2) Cobblestone and Taylor "suppressed the true owner"; (3) Cobblestone and Taylor knew that Cobblestone Glen Flats, LLC, was the true owner; (4) the suppression induced R&R-Beth to assume that Taylor was the owner; and (5) R&R-Beth suffered damage because it was unable to contact the owner after the break-ins. (Docs. 43 at 29–30).

The Brittain leases (executed in December 2018) failed to disclose, and therefore suppressed, the owner of the complex. *Aliant Bank v. Four Star Investments, Inc.*, 244 So. 3d 896, 930 (Ala. 2017) (explaining that a suppression is a "concealment or nondisclosure" of a fact). But R&R-Beth contends that it suffered damage because it lacked the owner's identity after the December 2019 break-ins. By that time, the Taylor leases said (although incorrectly) that Stephen Whatley owned the complex. (Doc. 30-13 at 89). That's misrepresentation, not suppression.

R&R-Beth's fraudulent suppression claim therefore fails for two reasons. First, there was no longer any suppression of the owner by the time R&R-Beth allegedly acted to its detriment. *See LaFerrara v. Camping World RV Sales of Birmingham*, 171 F. Supp. 3d 1257, 1269 (N.D. Ala. 2016) ("Suppression differs from misrepresentation in that it is based on a party's silence on or concealment of a material fact, rather than a false statement about that material fact."). Second, R&R-Beth cannot show that its belief that "Taylor was the owner," (doc. 43 at 29),

was a product of "reasonable reliance on the state of affairs as it appeared in the absence of the suppressed information," *Houston Cnty. Health Care Auth.*, 961 So. 2d at 814. Because, by then, the only information available to R&R-Beth stated that Stephen Whatley, not Taylor, was the owner. (Doc. 30-13 at 89). It therefore was unreasonable for R&R-Beth to keep believing that Taylor owned the complex.

The Court therefore grants summary judgment to Cobblestone and Taylor because R&R-Beth cannot satisfy the second or fourth elements of a fraudulent suppression claim. *Hardy*, 585 So. 2d at 32.

### C.    Conversion (R&R-Beth's Count 3).

R&R-Beth's third claim is for conversion. (Doc. 8 at 16). All three parties moved for summary judgment. The Court grants summary judgment to Cobblestone and Taylor, and denies it to R&R-Beth.

R&R-Beth says it requested a key to unit 75 but never received a key or access to the unit. (Doc. 36 at 34). And it argues that, by not allowing R&R-Beth to collect its personal property from unit 75, Cobblestone and Taylor converted that property. (*Id.*). Cobblestone and Taylor counter that R&R-Beth legally abandoned their property under the AURLTA. (Docs. 45 at 34–35, 38 at 18–20).

Conversion requires "a wrongful taking or a wrongful detention or interference, or an illegal assumption of ownership, or an illegal use or misuse of another's property." *Rice v. Birmingham Coal & Coke Co., Inc.*, 608 So. 2d 713,

714 (Ala. 1992). Abandonment is a common-law "defense to an action for conversion." *Horne v. TGM Assocs., L.P.*, 56 So. 3d 615, 628 (Ala. 2018). As the Alabama Supreme Court explained the common-law defense:

> [I]n Alabama, there is 'a presumption that one does not intend to abandon' property of value. 'Abandonment of property requires intent plus an act. A sufficient act is one that manifests a conscious purpose and intention of the owner of personal property neither to use nor to retake the property into his possession.' Obviously, '[a] determination of abandonment is a finding of fact.'

*Id.* And, along with the common-law defense, the Alabama Legislature has statutorily insulated landlords from liability for property left more than 14 days beyond the end of the lease term: "If a tenant leaves property in the unit more than 14 days after termination pursuant to this chapter, the landlord has no duty to store or protect the tenant's property in the unit and may dispose of it without obligation." ALA. CODE § 35-9A-423(d).

The lease for unit 75 ended on December 31, 2019. (Doc. 30-14 at 94–95). At some point in December, an R&R-Beth employee tried to access unit 75 but couldn't because he didn't have a key. (Doc. 28-2 at 76, 173–74). Later (on January 22, 2020), Mathias Hoene of R&R-Beth emailed a Taylor employee, asking for a key "to finish the move out." (Doc. 28-28 at 44).

The undisputed facts thus show that more than 14 days passed between the end of the lease term and R&R-Beth's asking for access. Under Section 35-9A-423(d), Cobblestone and Taylor had "no duty to store and protect" the property and

were entitled to "dispose of it without obligation." So neither can be liable for conversion, and the Court grants summary judgment to Cobblestone and Taylor.

### D.    Violation of AURLTA (R&R-Beth's Count 4)

R&R-Beth's final counterclaim alleges that Cobblestone and Taylor violated Section 35-9A-202 and 35-9A-163 of the AURLTA. All three parties moved for summary judgment. The Court grants summary judgment to Cobblestone and Taylor and denies it to R&R-Beth.

#### 1.    Section 35-9A-202

Section 35-9A-202(a) requires any "landlord or any person authorized to enter into a rental agreement on the landlord's behalf" to "disclose to the tenant in writing": (1) "the person authorized to manage the premises"; and (2) "an owner of the premises or a person authorized to act for and on behalf of the owner for the purpose of service of process and receiving and receipting for notices and demands." ALA. CODE § 35-9A-202(a).

And subsection (c) provides a statutory penalty for a person's failure to comply with subsection (a). "A person who fails to comply with subsection (a) becomes an agent of each person who is a landlord for" certain purposes such as service of process and performing the landlord's obligations under the AURLTA and the rental agreement. *Id.* § 35-9A-202(c).

R&R-Beth argues that Cobblestone and Taylor violated Section 35-9A-202(a) by failing to disclose Cobblestone Glen Flats, LLC, as the owner. (Doc. 36 at 34–35). But it does not explain how Section 35-9A-202 provides for a private cause of action or what relief it seeks. And Cobblestone and Taylor respond that this section does not allow a private cause of action or any penalty beyond subsection (c)'s making the person an agent of the landlord. (Docs. 37 at 29–31, 38 at 20–21).

The Court grants summary judgment to Cobblestone and Taylor because Section 35-9A-202 includes a self-contained statutory penalty and the AURLTA provides no other enforcement mechanism for a violation of that section. And R&R-Beth has not explained its basis for a private cause of action based on Cobblestone's and Taylor's apparent violation of Section 35-9A-202(a).

### 2.    Section 35-9A-163

Section 35-9A-163 prohibits rental agreement provisions that require a tenant "to pay the landlord's attorney's fees or cost of collection." ALA. CODE § 35-9A-163(a)(3). Subsection (b) then says:

> A provision prohibited by subsection (a) included in a rental agreement is unenforceable. If a landlord seeks to enforce a provision in a rental agreement containing provisions known by the landlord to be prohibited, the tenant may recover in addition to actual damages an amount up to one month's periodic rent and reasonable attorney's fees.

*Id.* § 35-9A-163(b).

First, R&R-Beth claims that Cobblestone and Taylor violated Section 35-9A-163(a)(3) by including an attorney-fee provision in the Taylor leases. (Doc. 30-13 at 90 (§ 5.1(4)).[8] But R&R-Beth has not explained how inclusion of that term, on its own, entitled it to any relief. Subsection (b) says that a tenant may recover damages, one month's rent, and attorney's fees, "*if* a landlord *seeks to enforce*" an attorney-fee provision in a rental agreement. ALA. CODE § 35-9A-163(b) (emphasis added). Neither Cobblestone nor Taylor have sought to enforce that provision in this case. And R&R-Beth has not explained how it can bring a private cause of action based merely on the inclusion of a prohibited term. So this argument lacks merit.

Second, R&R-Beth claims that Cobblestone and Taylor violated this section by "seeking to recover 'attorney's fees' in direct violation of" Section 35-9A-163. (Doc. 8 at 163). But, again, neither Cobblestone nor Taylor have sought to enforce the attorney-fee provision within the Taylor leases. Rather, Cobblestone seeks attorney fees under Section 35-9A-421(c), which allows a landlord to recover attorney fees "for noncompliance by the tenant with the rental agreement or Section 35-9A-301." (Doc. 37 at 31). So this point lacks merit, too.

In sum, the Court grants Cobblestone's and Taylor's motions for summary judgment on each of R&R-Beth's four counterclaims.

---

[8] Section 5.1(4) of the Taylor leases ("Bedbug Addendum") provided that R&R-Beth "agree[d] to indemnify and hold the owner harmless from any actions, claims, losses, damages and expenses including but not limited to attorneys' fees that Owner/Agent may incur as a result of the negligence of the Resident(s) or any guest occupying or using the premises." (Doc. 30-13 at 90 (§ 5.1(4))).

* * *

For the reasons above, the Court rules as follows on the parties' claims:

| Count | Defendant(s) | Who Moved? | Ruling |
|---|---|---|---|
| Cobblestone's Count 1 (Breach of Contract) | R&R-Beth | Cobblestone and R&R-Beth | Cobblestone's and R&R-Beth's motions are denied. |
| Cobblestone's Count 2 (Trespass) | R&R-Beth | R&R-Beth | R&R-Beth's motion is denied. |
| Cobblestone's Count 3 (Conversion) | R&R-Beth | R&R-Beth | R&R-Beth's motion is granted. |
| Cobblestone's Count 4 (Negligence) | R&R-Beth | R&R-Beth | R&R-Beth's motion is denied. |
| Cobblestone's Count 5 (Negligent Supervision) | R&R-Beth | R&R-Beth | R&R-Beth's motion is granted. |
| Cobblestone's Count 6 (Conspiracy) | R&R-Beth | R&R-Beth | R&R-Beth's motion is denied. |
| R&R-Beth's Counterclaim 1 (Breach of Agreement) | Cobblestone and Taylor | Cobblestone, Taylor, and R&R-Beth | Cobblestone's and Taylor's motions are granted. R&R-Beth's motion is denied. |
| R&R-Beth's Counterclaim 2 (Fraudulent Misrepresentation and Suppression) | Cobblestone and Taylor | Cobblestone and Taylor | Cobblestone's and Taylor's motions are granted. |
| R&R-Beth's Counterclaim 3 (Conversion) | Cobblestone and Taylor | Cobblestone, Taylor, and R&R-Beth | Cobblestone's and Taylor's motions are granted. R&R-Beth's motion is denied |
| R&R-Beth's Counterclaim 4 (Violation of AURLTA) | Cobblestone and Taylor | Cobblestone, Taylor, and R&R-Beth | Cobblestone's and Taylor's motions are granted. R&R-Beth's motion is denied |

This means that the Court grants Taylor's motion for summary judgment (doc. 31) and will dismiss Taylor from the case. It also means that the Court grants in part and denies in part Cobblestone's motion for partial summary judgment (doc. 29) and R&R-Beth's motion for summary judgment (doc. 28). Those parties will proceed to trial on the claims highlighted in green.

The Court will enter two separate orders; one that carries out these rulings and another that sets a telephone conference to discuss a trial schedule.

**DONE** and **ORDERED** on January 10, 2022.

_____
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE